Filed 7/9/26  P. v. Silva CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064662 |
| v. | (Super. Ct. No. FSB20381) |
| ISIDRO BUENO SILVA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of San Bernardino County, Rafael A. Arreola, Judge (Retired judge of the San Diego Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Thien Huong Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Daniel Rogers and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Appellant.

*     *     *

Defendant Isidro Bueno Silva appeals the trial court's denial of his motion to vacate his 1998 felony conviction for manufacturing methamphetamine, entered pursuant to a plea of nolo contendere. His motion was brought pursuant to Penal Code section 1473.7, subdivision (a)(1) on the ground he did not meaningfully understand or knowingly accept the immigration consequences of his plea.[1] The trial court denied the motion as untimely. We do not reach the timeliness issue but instead decide the appeal on the merits. Based on our independent review of the record, we conclude defendant failed to establish prejudicial error under section 1473.7, subdivision (a)(1), i.e., that it is reasonably probable he would have rejected the plea deal and attempted to defend against the charges had he understood he would be removed from the United States as a result of the conviction. We affirm.

FACTUAL SUMMARY AND PROCEDURAL HISTORY

I.

FACTS LEADING TO CRIMINAL CHARGES AND NOLO CONTENDERE PLEA

On or about October 22, 1998, San Bernardino police officers found a methamphetamine lab in a detached garage on defendant's residential property. When police first arrived to investigate, they were

---

[1] All further statutory references are to the Penal Code.

greeted at the door by defendant's 11-year-old daughter.[2] Defendant admitted to police he tried to manufacture and assisted others in manufacturing methamphetamine out of his garage, including an individual named Craig Young, who had been living off and on in the garage where the lab was located.[3] Defendants' family members told police they had noticed a smell coming out of the garage, defendant spent a lot of time in the garage with Young, there were people coming to and from the property, and the family suspected something "was going on" in the garage. Police recovered a multitude of items from defendant's property consistent with the manufacture of methamphetamine.

The People filed a felony complaint against defendant on October 26, 1998, charging him with manufacturing methamphetamine (Health & Saf. Code, § 11379.6, subd. (a); Count 1) and allowing a place for preparing or storing methamphetamine (Health & Saf. Code, § 11366.5, subd. (a); Count 2). As to Count 1, it was alleged the drug manufacturing occurred in a structure where a child under 16 years of age was present (Health & Saf. Code, § 11379.7, subd. (a)).

Defendant pleaded not guilty to the charges at his arraignment on October 27, 1998. On November 10, 1998, defendant withdrew his plea of

_____

[2] Defendant's three minor children, ages 11, 15 and 17, were removed from the home by child protective services and placed with relatives.

[3] When police knocked on the garage door, Young exited the garage. Police noticed a strong odor coming from the garage and observed Young's clothing was consistent with that worn by someone engaged in the manufacture of methamphetamine. Young also was arrested that day and charged with manufacturing methamphetamine. The charges against him, however, were later dismissed and/or stricken pursuant to a motion filed under section 995.

not guilty and pleaded nolo contendere to Count 1, pursuant to a plea agreement that dismissed Count 2 and the special allegation as to Count 1. Defendant initialed the following statement on the *Tahl* form: "I am freely and voluntarily entering the plea(s) of . . . nolo contendere [and admission(s)] as indicated: [¶] a. Because I am guilty (and for no other reason), and or [¶] b. As a result of plea bargaining after discussing with my attorney the possibility of my being convicted on other or more serious charges and risking the possibility of a longer sentence, and/or [¶] c. Because the [x] district attorney . . . has agreed to [¶] *3 yrs State Prison*."[4] (Italics added.) With respect to the immigration consequences of his plea, defendant initialed the box on the *Tahl* form that stated: "I understand that if I am not a citizen of the United States, deportation, exclusion from admission to the United States, or denial of naturalization may result from a conviction of the offense(s) to which I plead guilty/nolo contendere (no contest)."

---

[4] See *In re Tahl* (1969) 1 Cal.3d 122, overruled on other grounds by *Mills v. Municipal Court* (1973) 10 Cal.3d 288, 291.

The trial court denied defendant probation and sentenced him to the low term of three years in state prison. In 2000, defendant was removed from the United States to Mexico as result of his conviction.[5]

## II.

### SECTION 1473.7, SUBDIVISION (A)(1) AND

### DEFENDANT'S MOTION TO VACATE HIS CONVICTION

Section 1473.7 came into effect on January 1, 2017. (See *People v. Camacho* (2019) 32 Cal.App.5th 998, 1005.) Section 1473.7, subdivision (a)(1) allows a person who is no longer in custody to file a motion to vacate a conviction because: "The conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (*Ibid.*) "A finding of invalidity may, but need not, include a finding of ineffective assistance of counsel." (*Ibid.*)

"[T]o establish a 'prejudicial error' under section 1473.7, a person need only show by a preponderance of the evidence: (1) he did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and (2) had he understood the consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges." (*People v. Mejia* (2019) 36 Cal.App.5th 859, 862.)

---

[5] Defendant returned to the United States in 2004 but was removed again after being arrested on drug charges. We assume for purposes of our analysis that defendant's subsequent removal was also attributable to his 1998 conviction. The Attorney General does not suggest otherwise.

5

On August 19, 2022—five years after the effective date of the statute—defendant filed a motion to vacate his conviction pursuant to section 1473.7, subdivision (a)(1). He explained in his declaration in support of the motion that he arrived in the United States from Mexico 19 years before his arrest (i.e., in 1979 at the age of 24) and became a lawful permanent resident of the United States in 1992.[6] Defendant married his wife in 1984, she was illegally in the United States, and he was the sole financial provider for his family. Defendant stated he had two teenage children who were born and living in the United States and were citizens of the United States. One of his children was attending special education due to learning disabilities.

In his motion, defendant contended his public defender, E.J. Montanez, failed to tell him he *would* be deported, excluded from the United States, and denied naturalization if he pleaded guilty. He also contended his attorney failed to investigate his case and potential defenses to the charges, instead telling him not to worry and to "'go ahead and sign [the plea] and there won't be a problem.'" Defendant further stated that, had he understood the immigration consequences of his conviction, he never would have accepted the plea deal and would instead have sought an immigration-neutral plea or proceeded to trial.

Defendant also submitted a declaration from attorney Montanez, who stated that, although he was unable to find his case files and notes regarding defendant's case, his practice in 1998 during the pendency of defendant's case was to advise non-citizen clients a plea *may* cause them to be deported, but not to advise them they *would* be deported. Accordingly, Montanez would not have advised defendant he *will* be deported or that he

---

[6] At the time of his arrest, defendant was 43 years old.

will be considered an aggravated felon under federal immigration laws as a result of his plea. In addition, as of the date of defendant's plea agreement in 1998, Montanez did not believe it was his professional obligation to seek immigration neutral alternatives to defendant's plea.

The People opposed the motion, and the parties submitted numerous supplemental briefs. The trial court conducted an evidentiary hearing over two days in early 2024. On June 5, 2024, the court denied the motion as untimely pursuant to an order in which the court made findings of fact.

Defendant timely appealed the postjudgment order.

## DISCUSSION

Defendant contends the trial court erred in finding his motion untimely and he is entitled to relief on the merits. We need not decide the timeliness issue because, based on our independent review (see *People v. Vivar* (2021) 11 Cal.5th 510, 523–524),[7] we conclude defendant's motion fails

---

[7] Under the independent review standard, this court "'exercises its independent judgment to determine whether the facts satisfy the rule of law'" but gives deference to and does not second-guess factual findings made by the trial court. (*People v. Vivar*, *supra*, 11 Cal.5th at pp. 527–528.) "Whether counsel's advice regarding immigration was inadequate and whether such inadequacy prejudiced the defense, while mixed questions, are *predominantly questions of law*." (*Id*. at p. 524, italics added.) Under circumstances similar to those presented here, the appellate court in *People v. Alatorre* (2021) 70 Cal.App.5th 747, reached the merits of the defendant's section 1473.7 motion after concluding the trial court had erroneously denied the motion as untimely. (*Id*. at pp. 753–754, 767.) Here, both parties cited *Vivar* and agree we can (and should) decide the merits of defendant's motion using the independent review standard.

on the merits.[8]

We begin by noting the Attorney General concedes defendant's conviction carried immigration consequences. Indeed, defendant was removed from the United States soon after his conviction. The Attorney General also does not argue defendant failed to show he did not meaningfully understand the adverse immigration consequences of the plea. We assume for purposes of our analysis that defendant did not meaningfully understand the immigration consequences of his plea. (See *People v. Mejia, supra,* 36 Cal.App.5th at p. 862.) Instead, the Attorney General contends defendant failed to show prejudice. We agree.

To establish prejudice, defendant was required to show it is reasonably probable he would have rejected the plea had he understood the immigration consequences. (*People v. Vivar, supra*, 11 Cal.5th at pp. 528–529.) Whether a reasonable probability has been shown depends on the

---

[8] A motion filed pursuant to section 1473.7, subdivision (a)(1) "may be deemed untimely filed if it was not filed with reasonable diligence after the later of the following: [¶] (A) The moving party receives a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal or the denial of an application for an immigration benefit, lawful status, or naturalization. [¶] (B) Notice that a final removal order has been issued against the moving party, based on the existence of the conviction or sentence that the moving party seeks to vacate." (§ 1437.7, subd. (b)(2)(A) & (B).) However, where (as here) a defendant's adverse immigration consequences *predate* the enactment of section 1473.7, "a court assessing the timeliness of a section 1473.7 motion must determine when the petitioner would have had reason to seek legal help or otherwise investigate new forms of postconviction relief, and evaluate diligence from that point forward, in light of all the circumstances." (*People v. Alatorre, supra*, 70 Cal.App.5th at p. 753.) Although defendant filed his motion five years after enactment of the statute, the trial court did not address *Alatorre* or make any findings that may have been relevant to whether defendant had an opportunity to file the motion sooner than 2022.

totality of the circumstances. (*People v. Espinoza* (2023) 14 Cal.5th 311, 320, 325; *People v. Vivar, supra*, 11 Cal.5th at pp. 529–530.) Particularly relevant factors are (1) the defendant's ties to the United States, (2) the importance the defendant placed on avoiding the adverse consequences, (3) the defendant's priorities in seeking a plea bargain, and (4) whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible. (*Espinoza*, at p. 320; *Vivar*, at pp. 529–530.) "These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza* at p. 321.) Also relevant are the strength of the evidence of guilt (*People v. Diaz* (2022) 76 Cal.App.5th 102, 117); the disparity between the bargained-for sentence and the probable sentence after a trial (*Espinoza*, at p. 320; *Diaz*, at p. 115–116); and the source of the plea offer—a negotiated plea with the prosecution versus an open plea to the court (*People v. Asghedom* (2015) 243 Cal.App.4th 718, 726–727).

Based on the totality of the circumstances here, defendant failed to establish prejudice. First, defendant failed to show he would have had reason to believe there were immigration-neutral dispositions at the time of his plea. His statement in his declaration that he would have pleaded guilty to some lesser offense—such as misdemeanor paraphernalia or simple drug possession—or risked a trial had he known the immigration consequences is entirely speculative, conclusory and self-serving. After hearing testimony in connection with defendant's motion, the trial court made a factual finding that "[t]he policy at the San Bernardino District Attorney's office in 1998 did not allow or provide for an immigration neutral plea offer that would prevent removal or deportation for a defendant in this case." Indeed, at the time of defendant's conviction in 1998, the District Attorney's sentencing policy with regard to manufacturing methamphetamine was to prioritize prison time.

Any deviation from that policy required unusual circumstances and approval from a superior in the District Attorney's office and, even then, the result would be a plea to a felony with one year in jail as a term of probation. And in drug cases like this one, involving the presence of a child, the District Attorney's office would not deviate from a state prison sentence. In conducting our independent review, we are "mindful that "'[i]ndependent review is *not* the equivalent of de novo review . . . .'"", we do "not simply second-guess factual findings that are based on the trial court's own observations," and we are bound to "give particular deference to factual findings based on the trial court's personal observations of witnesses." (*People v. Vivar*, *supra*, 11 Cal.5th at pp. 527–528.)

Second, the evidence collected by the police strongly supported the allegations that defendant manufactured methamphetamine at a location where a minor was present. Defendant failed to show he had any defense to the charges, and his assertion the evidence showed only a "makeshift home lab for personal use, not a sophisticated manufacturing production for large-scale sale" is belied by the police report. Defendant admitted to police he was engaged in the manufacture of methamphetamine. Moreover, all of the makings of a lab were recovered from his property, and defendant's family provided eye witness evidence of defendant spending significant amounts of

time in the garage.[9] Notably, when police asked defendant's wife if people "ever showed up to contact [defendant] in the back garage area," she told them "yes, several [people] walked to the back, stayed a short time and then left."

Based on the evidence, "[t]he only way [defendant] could have hoped to remain in the country legally is to have taken the case to trial. The chance of his success, while not a consideration in and of itself, would necessarily have factored into his decision. That chance was slim." (*People v. Diaz, supra*, 76 Cal.App.5th at p. 117.) When weighed against a sentence of at least seven years in state prison, it is perfectly understandable that defendant decided to plead no contest to Count 1 and accept a three-year prison term.[10]

In support of his prejudice argument, defendant introduced evidence that, at the time of his conviction, his wife and children lived in the United States, he was a lawful permanent resident who had lived in the United States for approximately 19 years, he was the family's sole financial

---

[9] Defendant also relies on the outcome of the case against Young as evidence he could have obtained a more favorable outcome had his attorney investigated his case and explored similar options as that explored by Young's attorney. We are not persuaded. The case against Young was dismissed on a motion filed pursuant to section 995, but the record does not reflect the grounds for the motion or why it was granted. As the Attorney General notes, the trial court excluded the evidence relating to Young at the hearing on defendant's motion as speculative, and defendant does not challenge that evidentiary ruling in this appeal.

[10] The potential sentences for defendant's charged offenses in 1998 were as follows: Three, five, or seven years for manufacturing a controlled substance, two years for the child-present sentence enhancement, and two, three, or four years for maintaining a place for controlled substance sale or use.

provider, he had a teenage son with special needs, and had no prior criminal history. We agree with the Attorney General that defendant's family ties do not outweigh the circumstances showing it is not reasonably probable defendant would have rejected the plea and instead attempted to defend against the charges had he known of the immigration consequences of his plea. (*People v. Vivar*, *supra*, 11 Cal.5th at p. 517.)[11]

## DISPOSITION

The postjudgment order is affirmed.


GOODING, J.

WE CONCUR:


MOTOIKE, P. J.


SCHWARM, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

[11] We also note defendant did not introduce any evidence that he had ties to the local community, was employed in the United States, and lacked ties to Mexico.